IIN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

FLICK INTELLIGENCE, LLC,

                        Plaintiff,

            v.                                              CA No. 6:24-cv-00082

UNITY SOFTWARE INC. d/b/a
UNITY TECHNOLOGIES,

                        Defendant.

**UNITY SOFTWARE INC.'S MOTION TO DISMISS
<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

**<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ............................................................................................................. 1

II.     STATEMENT OF FACTS ............................................................................................... 2

        A.      The Parties ............................................................................................................ 2

        B.      The Sole Asserted Patent ...................................................................................... 3

                1.      The patent claims a method for looking through an AR device to view another
                        screen. ........................................................................................................ 3

                2.      The patent's prosecution history emphasizes the patent's central concept of looking
                        through one device's display to view another display. ............................................. 5

        C.      *Niantic* Litigation History ......................................................................................... 5

        D.      First Amended Complaint ........................................................................................ 6

III.    RELEVANT LEGAL STANDARDS ................................................................................ 6

        A.      Patent Infringement Must Be Pled With Specificity .................................................. 6

        B.      Collateral Estoppel Prevents Re-litigation of Issues Decided Previously And
                Promotes Judicial Economy .................................................................................... 7

        C.      Patent Eligibility Under 35 U.S.C. § 101 ................................................................. 7

IV.     ARGUMENT .................................................................................................................... 8

        A.      The FAC Fails To Identify The Accused Unity Device—Because No Such Device
                Exists. ..................................................................................................................... 8

        B.      The FAC Fails to Plausibly Allege Key Limitations of All Claims. ......................... 9

        C.      Collateral Estoppel Bars Flick's Assertion of the '451 Patent, which is Invalid
                Under § 101 .......................................................................................................... 13

        D.      The Court Should Dismiss the FAC Because All Asserted Claims are Ineligible
                Under 35 U.S.C. § 101 ........................................................................................... 15

                1.      Alice Step One: The '451 Patent is directed to the abstract idea of displaying
                        information about selected objects. .......................................................... 15

                2.      Alice Step Two: The elements of the claims, alone or combined, add nothing
                        inventive and only use generic components in generic ways. ................... 17

V.      CONCLUSION ................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acumed LLC v. Stryker Corp.*,
    525 F.3d 1319 (Fed. Cir. 2008) ................................................................................. 7

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
    620 F. App'x 934 (Fed. Cir. 2015) .......................................................................... 8

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016) ............................................................................. 16

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) ...................................................................... 15, 18

*AK Meeting IP LLC v. Zoho Corp.*,
    No. 1:22-CV-1165-LY, 2023 WL 1787303 (W.D. Tex. Feb. 6, 2023) ................. 12

*Alice Corp. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) .................................................................................*passim*

*Artrip v. Ball Corp.*,
    735 F. App'x 708 (Fed. Cir. 2018) .......................................................................... 8

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ............................................................................. 20

*Bates v. Union Oil Co. of Calif.*,
    944 F.2d 647 (9th Cir. 1991) ................................................................................. 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................... 6, 7

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) ............................................................................ 7, 12

*Brooks v. Raymond Dugat Co.*,
    336 F.3d 360 (5th Cir. 2003) ................................................................................. 13

*Chamberlain Grp. v. Techtronic Indus. Co.*,
    935 F.3d 1341 (Fed. Cir. 2019) ............................................................................. 17

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ............................................................................. 20

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004) ............................................................................. 13

*Elec. Power Grp., LLC* v. *Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ............................................................................. 15, 18

*Estech Sys., Inc. v. Regions Fin. Corp.*,
    No. 6:20-CV-00322-ADA, 2020 WL 6324321 (W.D. Tex. Oct. 28, 2020) (Albright, J.) ............ 6, 7, 8

*FairWarning IP*, *LLC* v. *Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016) .................................................................................... 18

*Flick Intel., LLC v. Apple, Inc.*,
    23-cv-00057-ADA (W.D. Tex.) ..................................................................................... 2, 3

*Flick Intel., LLC v. Google, LLC*,
    23-cv-00051-ADA (W.D. Tex.) ..................................................................................... 2, 3

*Flick Intel., LLC v. Jam City, Inc.*,
    23-cv-00653-ADA (W.D. Tex.) ................................................................................. 2, 3, 4

*Flick Intel., LLC v. Magic Leap, Inc.*,
    21-cv-01291-ADA (W.D. Tex.) ......................................................................................... 2

*Flick Intel., LLC v. Microsoft Corporation*,
    24-cv-00079-ADA (W.D. Tex.) ......................................................................................... 3

*Flick Intel., LLC v. Niantic, Inc.*,
    23-cv-02219-TLT (N.D. Cal.) .................................................................................*passim*

*Flick Intel., LLC v. NXP USA, Inc.*,
    24-cv-00080-ADA (W.D. Tex.) ......................................................................................... 2

*Grecia Est. Holdings LLC v. Meta Platforms, Inc.*,
    605 F. Supp. 3d 905 (W.D. Tex. 2022) ................................................................... 3, 7, 13

*Hartley v. Mentor Corp.*,
    869 F.2d 1469 (Fed. Cir. 1989) .................................................................................... 14

*Ho v. Floutsis*,
    No. 20-56017, 2022 WL 2115113 (9th Cir. June 13, 2022) ................................................. 15

*Intell. Ventures I LLC v. Capital One Bank (USA), Nat'l Ass'n*,
    792 F.3d 1363 (Fed. Cir. 2015) .................................................................................... 20

*Intell. Ventures I LLC* v. *Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) .................................................................................... 16

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018) .............................................................................. 16, 20

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
    2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) ..................................................................... 7

*Nat'l City Golf Fin., a Div. of Nat'l City Com. Cap. Co., L.L.C. v. Scott*,
   899 F.3d 412 (5th Cir. 2018) ........................................................................... 15

*Ohio Willow Wood Co. v. Alps South, LLC*,
   735 F.3d 1333 (Fed. Cir. 2013) .................................................................... 7, 13

*PersonalWeb Techs. LLC v. Google LLC*,
   8 F.4th 1310 (Fed. Cir. 2021) ........................................................................ 17

*Ringsby Truck Lines, Inc. v. Western Conf. of Teamsters*,
   686 F.2d 720 (9th Cir.1982) .......................................................................... 14

*Simio, LLC v. FlexSim Software Prods., Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020) ..................................................................... 19

*TecSec, Inc. v. Adobe Inc.*,
   978 F.3d 1278 (Fed. Cir. 2020) ..................................................................... 18

*Two-Way Media, Ltd. v. Comcast Cable Commc'ns LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ..................................................................... 20

*Vervain*, *LLC v. Micron Tech., Inc.*,
   2022 WL 23469 (W.D. Tex. Jan. 3, 2022) (Albright, J.) ................................ 12

**Statutes**

35 U.S.C. § 101 ..................................................................................... *passim*

35 U.S.C. § 102(b) ........................................................................................ 14

**Other Authorities**

Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2367 (4th ed.) ....................... 13

Fed. R. Civ. P. 12(b)(6) ................................................................................... 1

Fed. R. Civ. P.  41 .................................................................................. 6, 13,15

**Other References**

Aug. 31, 2022, https://youtu.be/D9NrjppXRPQ ...................................... 9, 11

iv

In its First Amended Complaint (Dkt. 9, "FAC"), Plaintiff Flick Intelligence, LLC ("Flick") alleges that Defendant Unity Software Inc. ("Unity") infringes U.S. Patent No. 9,465,451 (the "'451 Patent") by making and selling a non-existent "Unity device." FAC ¶ 20. Pursuant to Fed. R. Civ. P. 12(b)(6), Unity respectfully moves to dismiss the FAC for failure to state a claim for patent infringement.

## I.    INTRODUCTION

After filing a deficient Complaint that accused Unity of patent infringement by making a different company's product, Flick filed a FAC that remains deficient. The Court should dismiss the FAC with prejudice for at least one or more of the following reasons:

**First**, Flick never identifies any "Unity device" that it accuses of infringing the '451 Patent. Nor could it. Unity does not make or sell devices. It is a software company.[1]

**Second**, Flick does not (and cannot) plead four material limitations of the '451 Patent claims. The patent claims using the display of an augmented reality (AR) device (such as a cell phone that allows you to view your surroundings with a digital overlay, or a virtual reality headset that does the same) to view "additional information" about "video content" presented on a separate "display" (like a TV screen). For example, according to the purported invention, a user can wear their VR headset while watching a television program in order to see the names of the actors appearing on the TV screen. Thus, the '451 Patent undisputedly requires: (i) an AR device's display, (ii) a TV/movie display, (iii) **video content** displayed on the TV/movie display, and (iv) **additional information** about that video content. However, Flick failed to plead all four of these distinct limitations which are required by all claims and material to the purported invention.

**Third**, the Northern District of California issued an Order finding that the '451 Patent was

---

[1] Unity reminded Flick of this in a meet and confer before filing this Motion. Flick chose to disregard this again. Unity reserves the right to seek all appropriate sanctions and remedies.

invalid under 35 U.S.C. § 101 (the "Section 101 Order"). Flick fully participated in that case, chose not to appeal that order, and stipulated to dismiss that action with prejudice. Therefore, collateral estoppel prevents Flick (and the Court) from re-litigating this issue that was fully and fairly tried in a previous action and adversely resolved against Flick. There is no legitimate reason to burden this Court with precisely the same issue. Flick's contention that collateral estoppel does not apply because the Section 101 Order was vacated is incorrect factually and legally.

**Fourth**, as the Northern District of California has already found, Flick fails to plead sufficient facts to establish that the '451 Patent is valid under 35 U.S.C. § 101. *See* Ex. 1 (Section 101 Order). The '451 Patent fails to meet the now familiar two-step test set forth in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014). Under **step one**, the claims are directed to the abstract idea of displaying information about a selected object. This is a quintessentially human activity, analogous to placing Post-it notes on a selected object. Under **step two**, the claims add no inventive concept to the abstract idea. The elements of the claim, alone or in combination, merely use an off-the-shelf augmented reality device and other generic components used in generic ways to display information.

Accordingly, Flick fails to plausibly allege infringement of a valid patent. Unity, therefore, respectfully requests that the Court dismiss the FAC with prejudice.

## II.    STATEMENT OF FACTS

### A.    The Parties

Flick is a non-practicing entity (*see* FAC ¶ 19) based in New Mexico associated with Ortiz & Lopez PLLC (d/b/a OL Patents), an IP firm linked to dozens of patent litigation campaigns. Flick previously asserted the same patent asserted here in eight other suits: in this Court, against Google, Apple, Magic Leap, Microsoft, Meta, NXP Semiconductors, and Jam City,[2] and in the Northern

---

[2] *Flick Intel., LLC v. Magic Leap, Inc.*, 21-cv-01291-ADA (W.D. Tex.), *Flick Intel., LLC v. Google, LLC*, 23-cv-00051-ADA (W.D. Tex.), *Flick Intel., LLC v. Apple, Inc.*, 23-cv-00057-ADA (W.D. Tex.), *Flick Intel., LLC v. Jam City, Inc.*, 23-cv-00653-ADA (W.D. Tex.)., *Flick Intel., LLC*

District of California, against Niantic. *See Flick Intel., LLC v. Niantic, Inc.*, 23-cv-02219-TLT (N.D. Cal.). In the *Google*, *Apple*, *Meta*, and *Jam City* cases, each defendant moved to dismiss on the grounds that Flick failed to identify a separate display, as argued herein. Flick voluntarily dismissed all of the cases pending in this district, except its still-pending case against Meta, before any decisions.

Unity Software Inc. is a software company based in San Francisco, California. Founded in 2004, Unity believes that the world is a better place with more creators in it. It creates software tools to support creators with the development lifecycle of digital content for gaming, retail, automotive, architecture, engineering, and construction industries.

**B.      The Sole Asserted Patent**

The '451 Patent is entitled "Method, System and Computer Program Product for Obtaining and Displaying Supplemental Data About a Displayed Movie, Show, Event or Video Game" and issued on October 11, 2016. The patent is directed to using an augmented reality device's display to provide information about the content presented on a separate display. Specifically, a user watching media on a display (e.g., a movie or TV screen) can then use a secondary display of an augmented reality device (e.g., display of a VR headset or a cell phone) to provide additional information about the TV program (e.g., name of a shown actor).

*1.      The patent claims a method for looking through an AR device to view another screen.*

The patent's claims, specification, and prosecution history emphasize using the AR device's display to obtain information about information on the TV's display as the focus of the claimed invention. The specification explains that people "often have questions about places, people, and things' [sic] appearing as the video content is displayed," creating an alleged need to "provide people

---

*v. NXP USA, Inc.*, 24-cv-00080-ADA (W.D. Tex.), and *Flick Intel., LLC v. Microsoft Corporation*, 24-cv-00079-ADA (W.D. Tex.).

with the ability to select a specific scene element [from the video content] to obtain information about only that element[.]" '451 Patent at 1:64-2:10. As such, "users do not interfere with each other's enjoyment of the movie [etc.]" because a "venue can display video on a large display while also providing movie annotation data to people watching the video through augmented reality devices[.]" *Id.* at 16:36-42. The specification explains that "a user with a cell phone type device can [] view the large display or can view an augmented but smaller version on the cell phone." *Id.* at 16:44-46.

Figure 4 "illustrates … a user 122 accessing a video annotation infrastructure through an augmented reality device 161, [such as handheld device 120] in accordance with the disclosed embodiments . . . The user 122 can watch the movie through the AR device 161" like handheld device 120, so "users can view the world through their own eyes or can view an augmented version by viewing the world through the device." *Id.* at 12:18-37, Fig. 4 (cropped, annotated):



"As seen in FIG. 4, the user 122 is aiming the camera at the display and is, oddly, watching the display on a secondary display 129 [of the AR device][,]" where "the secondary display 129 can also present annotation data . . . and can overlay various other visual elements[.]" *Id.* at 12:37-43.

*Each and every* claim requires using the secondary display of the augmented reality device to view and augment video presented on a separate display. Claim 1 recites that a viewer "looks through" the "secondary display" of the "augmented reality device to view the display and utilizes the augmented reality device to point at and select the scene element" that is "displayed in a frame of video content being presented on [the] display."

1. A method for displaying additional information about a scene element displayed in a

frame of ***video content being presented on a display***, the method comprising:

> ***determining a location of the display in relation to an augmented reality device*** wherein a plurality of markers is used to determine the location of the display, wherein ***the augmented reality device comprises a secondary display***, and wherein the location of the display is used to map points on the display to points on the secondary display;

> detecting a selection of the scene element ***wherein a viewer looks through the augmented reality device to view the display and utilizes the augmented reality device to point at and select the scene element***; and

> displaying the additional information to the viewer on the secondary display, in response to the selection.

'451 Patent, claim 1 (emphasis added). The other independent claims merely recite a system with generic computer memory, a processor (claim 8), and a generic computer program (claim 14) that carries out claim 1's steps. Thus, claim 1 is representative. *See also* Ex. 1 at 6-9.

> 2.   *The patent's prosecution history emphasizes the patent's central concept of looking through one device's display to view another display.*

The concept of providing information about content on a display viewed through the secondary display of an augmented reality device was material to the issuance of the '451 Patent. During prosecution, the Applicants distinguished prior art that simply allowed users to view videos displayed on an augmented reality device: "Applicants request Examiner to notice that **viewing the display** via the augmented reality device is **not the same** as **viewing the video content** through the AR device because the display is a device. The viewer sees **video content** because they are looking through the AR device at the display while the display presents the content." Ex. A to Unity's Motion for Judicial Notice at 7 (emphasis added) (Dkt. 18-2). Similarly, the Applicant explained that the term "looks through" in the claim language—as in, "a viewer *looks through* the augmented reality device to view the display," '451 Patent at claim 1—means "**to look into one side and beyond the opposite side**." Ex. B to Unity's Motion for Judicial Notice at 10 (emphasis added) (Dkt. 18-3).

> **C.**   ***Niantic* Litigation History**

In *Niantic*—the case that gives rise to collateral estoppel here—the defendant moved to

dismiss Flick's complaint on the grounds that the '451 Patent was not directed to patent-eligible subject matter under § 101. *See* Exs. 2 (Niantic's Motion to Dismiss), 3 (Flick's Opposition), 4 (Niantic's Reply). After briefing and oral argument, the district court granted the defendant's motion, and dismissed the complaint on November 15, 2023. *See* Ex. 1. Although the district court provided leave to amend its complaint within 14 days, Flick chose not to amend its complaint. Instead, Flick and Niantic dismissed the action with prejudice under Rule 41(a). *See* Ex. 5. They simultaneously submitted a joint stipulation requesting that the court vacate its Section 101 Order. *See* Ex. 6.

### D.     First Amended Complaint

Flick initiated this action on February 8, 2024 by filing its original Complaint, Dkt. 1. That Complaint alleged that Unity infringed by making and selling "Passthrough," which is an offering of non-party Meta. *See* Dkt. 1 ¶¶ 20, 22-23. After Unity notified Flick that it had accused Unity of patent infringement based on a non-party's product, Flick amended its complaint to replace references to "Passthrough" with an unnamed "Unity device." FAC ¶¶ 20, 22-23. Unity met and conferred with Flick concerning deficiencies in the FAC, but Flick chose not to seek any amendment.

## III.    RELEVANT LEGAL STANDARDS

### A.     Patent Infringement Must Be Pled With Specificity

To survive a motion to dismiss, a complaint must plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Courts applying *Twombly* to patent infringement complaints have established certain minimum pleading standards. *See, e.g., Estech Sys., Inc. v. Regions Fin. Corp.*, No. 6:20-CV-00322-ADA, 2020 WL 6324321, at *2 (W.D. Tex. Oct. 28, 2020) (Albright, J.) (citations omitted).

First, the complaint must *identify* the accused product: "District courts have interpreted *Twombly*, *Iqbal*, and *Disc Disease* to require a patent infringement Plaintiff to identify an accused product by name in most cases such that the Defendant is on notice of what specific conduct is alleged

to constitute infringement." *Estech*, 2020 WL 6324321 at *2 (citations omitted).

Second, the complaint must explain *how* the product infringes: "Additionally, the pleading standards established by *Twombly* and *Iqbal* require a plausible inference that an accused device meets all of the limitations of the asserted claims." *Id.* (citation omitted). A plaintiff must "articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). "A literal infringement claim 'require[s] a showing that each and every limitation set forth in a claim appears in the accused product.'" *Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, 605 F. Supp. 3d 905, 909 (W.D. Tex. 2022) ("*Grecia*") (quoting *Iron Oak Techs., LLC v. Acer Am. Corp.*, 2017 WL 9477677, at *3 (W.D. Tex. Nov. 28, 2017)).

## B. Collateral Estoppel Prevents Re-litigation of Issues Decided Previously And Promotes Judicial Economy

"The Fifth Circuit has held that collateral estoppel applies if: '(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision.'" *Grecia*, 605 F. Supp. 3d at 910 (quoting *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013)). Fifth Circuit law applies here. *See, e.g., Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008) ("To the extent that a case turns on general principles of claim preclusion, as opposed to a rule of law having special application to patent cases, this court applies the law of the regional circuit in which the district court sits"); *see also Grecia*, 605 F. Supp. 3d at 910 ("Regional circuit law governs the general procedural question of whether collateral estoppel (i.e., issue preclusion) applies … .").

## C. Patent Eligibility Under 35 U.S.C. § 101

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

35 U.S.C. § 101. The two-step framework of *Alice*, addressed within, governs whether computer-based claims are ineligible under § 101. *Alice*, 573 U.S. at 217-27.

**IV.    ARGUMENT**

   **A.    The FAC Fails To Identify The Accused Unity Device—Because No Such Device Exists.**

   The FAC claims that Unity infringes because it makes a so-called "Unity device." FAC ¶ 20 ("Defendant offers for sale, sells and manufactures device(s), including but not limited to the Unity device as shown in Exhibit B … .").[3] But the FAC and its exhibits never name or otherwise identify this device. Exhibit B, which, according to Flick, "show[s]" the Unity device in question, shows no device at all, despite eight references to a "Unity device" or similar. This alone is fatal.

   Flick's inability to identify a "Unity device" is not surprising. No such device exists. Unity Software Inc. is a software company that does not make or sell devices. Even a cursory review of Unity's website (unity.com, including https://unity.com/products) and its public SEC filings make this abundantly clear.

   Because Flick failed to identify a Unity device, the Court should dismiss the FAC. A "patent infringement Plaintiff [must] identify an accused product by name in most cases such that the Defendant is on notice of what specific conduct is alleged to constitute infringement." *Estech*, 2020 WL 6324321 at *2; *see also Artrip v. Ball Corp.*, 735 F. App'x 708, 714 (Fed. Cir. 2018) (affirming dismissal of complaint that alleged "one or more of the machines at least at the Bristol Plant" infringed, but "did not otherwise identify the accused machines."); *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 937 (Fed. Cir. 2015) (holding that there "must be some allegation of specific services or products of the defendants which are being accused" to survive

---

[3] *See also* ¶ 22 ("the AR application developed using Unity device as shown in Exhibit B … ."); ¶ 23 (same); ¶ 7 (alleging Unity "makes, uses, sells, offers for sale, imports, ships, distributes, advertises, promotes, and/or otherwise commercializes such infringing products into this District and the State of Texas.").

dismissal). Because Plaintiff failed to identify an infringing device, its FAC fails to state a claim.

Exhibit B, which purports to "show[]" the Unity device (FAC ¶ 20) and include infringement allegations, shows heavily-cropped screenshots of the user interface of Unity's software as displayed, not an AR device showing the real world around it.



Exhibit B at 7; *compare with* Ex. 8 to Wray Decl. (full frame screenshot).

Exhibit B's many textual references to a "Unity device" are nonsensical because no device is shown. *See id.* at 6-8. Exhibit B's screenshots are cropped stills of a YouTube video linked in the Exhibit. *See* Exhibit B, *passim* (linking to https://youtu.be/D9NrjppXRPQ). The YouTube video confirms that Flick's screenshots in Exhibit B depict the user interface of Unity's simulation software. *See* Unity Software Inc., Unite Copenhagen- AR Foundation, YouTube video, 6:12, Aug. 31, 2022, https://youtu.be/D9NrjppXRPQ ("Unite Copenhagen Video") at 0:41-1:23 ("MARS is our suite of design and simulation tools … You can be constantly testing without having to make a device build.").

In sum, the Court should dismiss the FAC because Flick has failed to identify the *sine qua non* of a patent infringement complaint: an infringing device.

**B.    The FAC Fails to Plausibly Allege Key Limitations of All Claims.**

Flick also failed to plausibly allege infringement in the FAC. The '451 Patent requires two displays: an AR device display and a TV/movie display. Specifically, the crux of the purported

invention is using the display of an augmented reality device (the "secondary display") to show additional information about video content shown on a separate display (like a TV or movie screen, referred to herein as the "primary display"). Flick's allegations fail to identify the primary "display," the "secondary display," "video content" shown on the primary display or "additional information" about that video content (see Fig. 4, cropped and annotated).



*First*, Flick fails to identify anything for the primary "display." Flick states that the required primary "display" may exist in a user's "surroundings," stating with no factual support: "For example, it is apparent for a person skilled in the art that the surroundings may comprise a video display including but not limited to television, laptop and billboards ('display')." Ex. B at 6. But the accompanying screenshot does not show a primary display, or any video display whatsoever. It shows virtual objects.

*Second*, Flick fails to identify anything for the "secondary display" of the AR device. The claims require a viewer to "look[] through the augmented reality device [the secondary display] to view" the primary display. But, as noted above, Exhibit B does not show an AR device of any kind at all. It shows the user interface of Unity's software, which cannot be used to look at one's surroundings. The screenshots in Exhibit B plainly demonstrate that Unity's software is **not** showing the real world as Flick claims.[4] Instead, the depicted Unity software simply depicts a 3D rendering

---

[4] Specifically, Exhibit B suggests that Unity performs a method that displays information about the real world at least twelve times, including the following (all emphases added):

- "Unity captures video content in the **real world** by identifying the location and position of the **real objects**." Exh. B. at 5.

of a room. Indeed, Flick has cropped the full frame of the YouTube video, which states "Simulation" at the top of the frame. *See* Unite Copenhagen Video at 1:35, 1:37; *see also* Ex. 8 to Wray Decl. (full frame screenshot).

*Third*, because Flick failed to identify a primary display, it necessarily follows that Flick fails to identify a "scene element displayed in a frame of *video content being presented on [the primary] display*." '451 Patent cl. 1 (emphasis supplied). Flick's infringement allegations refer to "objects" that Unity's device can recognize and Flick defines these "objects" as "scene elements." However, Flick has not identified any video content being presented, much less video content being presented on a primary display. Moreover, the "objects" referred to by Flick are wholly unrelated to video content or any scene element displayed in a frame of video content.

*Fourth*, because Flick failed to identify "video content," it necessarily follows that Flick fails to identify "*additional information* about [the] scene element displayed in a frame of video content." *Id.* (emphasis supplied). Instead, Flick identifies a text readout related to the dimensions of a virtual selection box shown in Unity's software as "additional information." Textual information about a digital selection box that appears in the user interface of a software development tool is not "additional information about [a] scene element displayed in a frame of video content." *Id.*

Finally, even if Flick had successfully identified a "Unity device," the Court should still dismiss the FAC because Flick fails to identify how Unity practices the four most critical limitations of the '451 Patent: (1) a primary "display," (2) the "secondary display" of an AR device, (2) "video content" presented on that primary "display," and (3) "additional information" about the video

---

- "[T]he video display is detected as a **real object** in the application." *Id.*
- "[I]f the **real object** moves in the frame, the additional information moves with it." *Id.*
- "[T]he Unity device allows the user to view … the **real objects** in video display through the device and get a visual representation of the scene on the device's screen." *Id.* at 6.

content.

Flick's failure to identify either the primary or secondary "displays" is particularly significant given that this Court has emphasized the importance of pleading factual detail for limitations capturing the point of novelty for a patent. *Vervain*, *LLC v. Micron Tech., Inc.,* 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022) (Albright J.) ("a complaint nakedly alleging that the accused product practices the claimed invention's point of novelty will rarely suffice"). The limitation—using the display of an AR device to obtain information about video content presented on a separate display— is material to practicing the asserted claims. *See Bot M8*, 4 F.4th at 1353 (noting that materiality of limitation at issue is important to the sufficiency of pleading direct infringement). During prosecution, Flick expressly distinguished viewing a single display from the claimed invention of viewing video content on a primary display using a secondary AR display. Ex. A to Unity's Motion for Judicial Notice at 7 ("Applicants request Examiner to notice that **viewing the display** via the augmented reality device is **not the same** as **viewing the video content** through the AR device.") (emphasis added) (Dkt. 18-2).

Flick must provide "a higher level of detail in pleading infringement" of the display limitations because those limitations are the purported points of novelty in the '451 Patent. *Vervain*, 2022 WL 23469, at *5; *see also AK Meeting IP LLC v. Zoho Corp.*, No. 1:22-CV-1165-LY, 2023 WL 1787303, at *5-*6 (W.D. Tex. Feb. 6, 2023) (granting motion to dismiss because complaint "ignor[ed] material limitation[s] to" the asserted patent). Flick failed to do so here.

In sum, Flick failed to allege that Unity uses an AR device's display to provide additional information about video content presented on a primary display. Therefore, Flick does not plausibly plead that Unity infringes the '451 Patent.[5]

---

[5] The FAC twice states that Unity "indirectly" infringes the patent, but does not allege the elements of either induced or contributory infringement. FAC ¶¶ 9, 24. If Flick argues that these throwaway references allege indirect infringement, that argument fails in light of Flick's failure to allege direct

C.     **Collateral Estoppel Bars Flick's Assertion of the '451 Patent, which is Invalid Under § 101.**

The Northern District of California invalidated the '451 Patent for lack of patent-eligible subject matter on November 15, 2023. *See* Ex. 1. Flick elected not to appeal that Order and thus has no objectively reasonable basis to assert that the patent is valid.

"Collateral estoppel protects a party from having to litigate issues that have been fully and fairly tried in a previous action and adversely resolved against a party-opponent." *Grecia*, 605 F. Supp. 3d at 910 (quoting *Ohio Willow Wood*, 735 F.3d at 1342. "The Fifth Circuit has held that collateral estoppel applies if: '(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision'"). *Id.* (quoting *Ohio Willow Wood*, 735 F.3d at 1342). The application of collateral estoppel preserves judicial resources by avoiding relitigating issues that have already been litigated and decided.

All three requirements for applying collateral estoppel are met here: the validity of the exact same claims under 35 U.S.C. § 101 was previously adjudicated, the parties fully litigated the issue, and the previous issue was necessary to the decision. On January 9, 2024, Flick dismissed its claims against Niantic with prejudice under Rule 41(a). *See* Ex. 5. Under Fifth Circuit law, a plaintiff's voluntary dismissal with prejudice constitutes a final judgment on the merits. *See, e.g., Brooks v. Raymond Dugat Co.*, 336 F.3d 360, 362 (5th Cir. 2003) (recognizing that a voluntary dismissal with prejudice operates as a final adjudication on the merits). This holding comports with general federal law. *See* Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2367 (4th ed.) ("[A] dismissal with prejudice, whether by judicial order or stipulation is final, appealable, and unless the court has made some other provision, is subject to the general rules of preclusion—res judicata and

---

infringement. *See, e.g., Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1277 (Fed. Cir. 2004) ("[F]ailure to prove direct infringement … necessarily dooms its allegations of indirect infringement, because '[a]bsent direct infringement of the claims of a patent, there can be neither contributory infringement nor inducement of infringement.'") (internal quotation omitted).

collateral estoppel … .").

The Federal Circuit decided a similar case in *Hartley v. Mentor Corp.*, 869 F.2d 1469, 1472 (Fed. Cir. 1989). In that case, plaintiff first asserted a patent against 3M. The *3M* court granted summary judgment of invalidity under 35 U.S.C. § 102(b), and the parties then entered a stipulated judgment dismissing the infringement claim with prejudice. *Id.* at 1471. The plaintiff then sued a third party, and the third party invoked collateral estoppel based on the 3M case. *Id.* The plaintiff argued that "where a judgment is entered pursuant to a stipulation of the parties, [it] will give rise only to claim preclusion, not issue preclusion." *Id.* at 1471-72. The Federal Circuit disagreed and noted that "[w]here rulings made after a full and fair opportunity to litigate are firm and consistent with the subsequent settlement agreement by the parties and the judgment actually entered in the case, issue preclusion has been applied as to those issues when raised in a subsequent suit." *Id.* at 1472 (citations omitted). The Federal Circuit affirmed the district court's decision that the plaintiff was collaterally estopped from relitigating the patent's validity. *Id.*

Flick, left with no real argument on the merits, argues that the Northern District of California vacated the Section 101 Order. *See* Ex. 7 at Dkt. 39 (*Flick v. Niantic* Docket). That argument fails for several reasons:

- First, the court's Order (Ex. 7 at Dkt. 39) does not expressly vacate the Section 101 Order.

- Second, even if the district court vacated the Order, the Ninth Circuit previously held that a judgment vacated by a district court can still have preclusive effect. *See Bates v. Union Oil Co. of Calif.*, 944 F.2d 647, 650 (9th Cir. 1991) ("We hold that the [] judgment did not lose preclusive effect simply because it was vacated.") In *Bates*, the Ninth Circuit confirmed that if the district court "does not consider *Ringsby* in granting or denying the motion to vacate, **the question of issue preclusion** from the first trial **will remain open for subsequent determination in a later case**." *Id.* at 651 (emphasis added) (citing *Ringsby*

14

*Truck Lines, Inc. v. Western Conf. of Teamsters*, 686 F.2d 720, 722 (9th Cir.1982)).

- Third, Flick dismissed its claims with prejudice more than a month earlier, so the *Niantic* court lacked jurisdiction to vacate its November 15, 2023 Order.[6]

Accordingly, Flick is collaterally estopped from asserting the '451 Patent. The Court should, therefore, dismiss the FAC with prejudice.

### D.  The Court Should Dismiss the FAC Because All Asserted Claims are Ineligible Under 35 U.S.C. § 101.

If, for some reason, collateral estoppel does not apply, the Court should determine that the asserted patent claims are invalid under 35 U.S.C. § 101.

> *1. Alice Step One: The '451 Patent is directed to the abstract idea of displaying information about selected objects.*

At *Alice* step one, the Court determines if the patent's claims are directed to an abstract idea. Here, the focus of the claims is using a device to display information about selected objects. Flick itself agrees with this characterization. Flick characterizes the invention as one that "allows a user to obtain information with a great degree of specificity." Ex. 3 at 7. Thus, "[s]tripped of excess verbiage," Flick's characterization of the '451 Patent's claims is materially the same as Unity's—displaying information about a selected object. *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1256 (Fed. Cir. 2016).

Because the parties agree on the claims' focus, the Court need only determine whether that focus is an abstract idea. *Elec. Power Grp., LLC* v. *Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

---

[6] *See, e.g., Ho v. Floutsis*, No. 20-56017, 2022 WL 2115113, at *1 (9th Cir. June 13, 2022) ("Ho's voluntary dismissal without prejudice under Federal Rule of Civil Procedure 41(a)(1) automatically terminates the action, and thus federal jurisdiction, without judicial involvement. The action is terminated at that point, as if no action had ever been filed.") (internal citations and quotation marks omitted); *Nat'l City Golf Fin., a Div. of Nat'l City Com. Cap. Co., L.L.C. v. Scott*, 899 F.3d 412, 415–16 (5th Cir. 2018) ("A stipulation of dismissal … ordinarily—and automatically—strips the district court of subject-matter jurisdiction. This typically means that any action by the district court after the filing of such a stipulation can have no force or effect.") (internal citations and quotation marks omitted).

It undoubtedly is. "Offering a user the ability to select information to be displayed is one of the 'most basic functions of a computer.'" *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1347 (Fed. Cir. 2018) (quoting *Alice*, 573 U.S. at 225). Indeed, displaying information about an element to a user is a commonplace human concept. *See Intell. Ventures I LLC* v. *Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) ("*Symantec*") ("'fundamental … practice[s] long prevalent' are abstract ideas") (quoting *Alice*, 573 U.S. at 219). People provide context for scene/frame elements within a video, whether by discussing elements aloud or taking and providing notes.

The Federal Circuit affirmed the invalidity of a strikingly similar patent, U.S. Patent No. 8,688,085 ("the '085 Patent"). *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1267 (Fed. Cir. 2016). The '085 Patent described a networked media management system that responded to user requests for media by sending the media content from the library. *Id.* at 1268 ("[C]laim 14 is directed to a network-based media system with a customized user interface, in which the system delivers streaming content from a network-based resource upon demand to a handheld wireless electronic device having a graphical user interface."). The Federal Circuit agreed with the district court that the claims were directed to the "abstract idea of 'delivering selectable media content and subsequently playing the selected content on a portable device.'" *Id.* (quoting district court). It rejected the patentee's argument that, at the time of the patent, wireless streaming was not well-known, remarking that "[t]he patent … does not disclose any particular mechanism for wirelessly streaming content to a handheld device." *Id.* at 1269. The claims generally described streaming but did not "provid[e] any limiting detail that confines the claim to a particular solution." *Id.*

Similarly, the '451 Patent describes the abstract idea of providing information (like the '085 Patent's "streaming content") on an AR device's screen based on a viewer's selection of a visual element (like the '085 Patent's "delivering selectable media content and … playing the selected content on a portable device"). Although the '451 Patent generally describes how an AR device can

detect a display—by using conventional markers—the claims do not provide any limiting detail that confines those claims to a particular solution.

Indeed, the claimed invention itself requires humans to select the frames/scenes they want more information about. *See* '451 Patent at 2:5-10; *supra* at 2. The fact that the claimed activities are akin to—and depend on—activities "that 'can be performed in the human mind' or 'using a pencil and paper'" is "a telltale sign of abstraction." *PersonalWeb Techs. LLC* v. *Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021) (claims for generating and using "content-based identifier" are abstract, akin to human activities) (internal citations omitted).

The other independent claims are materially the same and directed to the same abstract idea as claim 1 of the '451 Patent, as the *Niantic* court already found in determining that claim 1 was representative. *See* Ex. 1 at 6-9. Claim 8 simply recites the same steps as performed by a "system comprising: a memory; and a processor with the memory, wherein the system configured to perform a method…" '451 Patent at 32:15-18. Similarly, claim 14 recites performing the same steps using a "computer program product comprising: a non-transitory storage medium readable by a processor and storing instructions for execution…" '451 Patent at 32:58-62.

  2. Alice *Step Two: The elements of the claims, alone or combined, add nothing inventive and only use generic components in generic ways.*

At *Alice* step two, the Court must determine if the claims add something "significant" "apart from" the abstract idea—an inventive concept that "transform[s] the abstract idea … into a patent-eligible application." *Chamberlain Grp*. v. *Techtronic Indus. Co*., 935 F.3d 1341, 1348-49 (Fed. Cir. 2019). Flick's patent claims do not add anything inventive to the abstract idea.

The '451 Patent's claims *use* computer technology but do not purport to *invent* or *improve* such technologies. *See* Ex. 1 at 17-19 (noting that claim 1 "does not improve users' ability to obtain information by using an AR device … ."). The patent's claims and specification do not disclose any means of implementing the technologies required to fulfill the claimed limitations for displaying

video content, recognizing, or selecting objects on a secondary device, communicating information between devices, or determining the location of one device with respect to the other. Rather, as noted, the patent references these known, commercialized technologies and states that they should be used to carry out the claimed method. *See, e.g.,* '451 Patent at 1:67-2:2 ("[d]atabases containing information about the content such as the actors in a scene or the music being played already exist and provide users with the ability to learn more."); *id.* at 25:48-51 ("Communications between the multimedia display and the [second device] may be wireless (e.g., bidirectional wireless communications) or wired (e.g., USB, HDMI, etc.)"); *id.* at 13:34-37 ("Automated facial recognition applications already exist for annotating still images … ."); *id.* at 12:28-29 (noting that the method can include "markers that help the AR device 161 determine the screen location and distance," without ever describing what the markers are, how to program devices to recognize them, et cetera).

The use of known technologies found in the claims to fulfill the same repeated steps are the same "basic functions of a computer" and "purely functional and generic" components that courts routinely conclude merely automate the abstract idea in a "particular technological environment"—which is insufficient to add an inventive concept. *Alice*, 573 U.S. at 225-26; *see id*. ("data processing system" and "data storage unit" are non-inventive); *Elec. Power Grp.,* 830 F.3d at 1355 ("off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information" is non-inventive); *FairWarning IP*, *LLC* v. *Iatric Sys., Inc.,* 839 F.3d 1089, 1097 (Fed. Cir. 2016) (receiving input via interface and providing notifications are non-inventive).

A claim must "identify[] a 'specific' improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020); *see also Affinity Labs*, 838 F.3d at 1263 ("There is no further specification of a particular technology for getting the defined content displayed. Thus, the user-downloadable application does not constitute an inventive concept.").

The dependent claims, likewise, lack any inventive concepts, a conclusion confirmed by the *Niantic* court. *See* Ex. 1 at 6-9. As the chart below shows, the dependent claims merely add generic computing devices (e.g., a camera or smartphone) or computer functions (duplicating displays, allowing the device to select objects from more than one screen) to the independent claims.

| Claim | Description | Classification |
|-------|-------------|----------------|
| 2, 9 | The secondary display—the display that shows information to the viewer about the selected object—is a smartphone or a pad computing device | Generic device (smartphone, iPad) |
| 3, 6, 10, 13 | The secondary display shows a cursor that the viewer uses to select the object, and (for claims 3 and 13 only) the cursor looks different when it is over a selectable object | Generic computer function (e.g., cursor changes appearance when above a hyperlink) |
| 4, 11 | The secondary display shows the same video content that is on the main display | Generic computer function (duplicating display) |
| 5 | The scene alignment module (the patent describes a "module" as hardware, software, or some combination of both, '451 Patent at 7:30-34) determines the location and distance of the display in relation to the secondary display; | Black box / Generic computer function (Nondescript software or hardware that the patentee describes purely by its function) |
| 7 | The viewer can be viewing and obtaining information about objects on more than one screen (e.g., sitting at a sports bar and watching multiple TVs) | Generic computer function (Mobile device configured to communicate with one or more computers) |
| 12 | The secondary display is a camera with a display | Generic device (Digital camera) |

Dependent claim 5 references a "scene alignment module," but the concept is never described or explained. Instead, the claims define the module based on a function—"determines the location and distance of the display in relation to the secondary display." The module (which is hardware, software, or both—the patent never says) requires no particular, let alone inventive, configuration or programming. Because it is a black box defined purely by its function, the "scene alignment module" merely reflects "the abstract idea itself, which 'cannot supply the inventive concept.'" *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1363-64 (Fed. Cir. 2020) (internal citation omitted);

*see also Intell. Ventures I LLC v. Capital One Bank (USA), Nat'l Ass'n*, 792 F.3d 1363, 1370-71 (Fed. Cir. 2015) (reciting "software brain" for performing abstract idea is non-inventive).

Even when these basic functions and components are viewed "as an ordered combination," there is no "specific implementation" or "specific improvement" in computer technology that might provide an inventive concept. *Bascom Glob. Internet Servs., Inc.* v. *AT&T Mobility LLC*, 827 F.3d 1341, 1348-49 (Fed. Cir. 2016). The claims' arrangement merely tracks the necessary steps for performing the abstract idea using conventional functionality—which does not confer eligibility. *See, e.g., Alice*, 573 U.S. at 225-26. The claims provide no computer-specific solution to a uniquely computer-based problem, unlike the cases in which courts found cases eligible at *Alice* step two, such as *Bascom*, 827 F.3d at 1350 (specific improved architecture for filtering and customizing internet content), and *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (specific solution to computer problem with no real-world analogue). Instead, the claims supply only "result-based functional language"—they "do[] not sufficiently describe how to achieve these results," *Two-Way Media, Ltd. v. Comcast Cable Commc'ns LLC,* 874 F.3d 1329, 1337 (Fed. Cir. 2017), or "how to engineer" the system, *Interval Licensing*, 896 F.3d 1335. This failure is insufficient to make the claims patent eligible.

## V.      CONCLUSION

The FAC is deficient many times over. Although Unity notified Flick of its defective pleadings on multiple occasions (to promote judicial economy), the FAC still falls short of the minimum requirements for pleading a patent infringement complaint, including identification of an infringing device and plausible allegations of infringement. Flick's assertion of the patent, which is invalid under Section 101, is also barred by the doctrine of collateral estoppel. Because any further amendment would be futile, the Court should dismiss the FAC with prejudice.

Date: April 29, 2024

Respectfully submitted,

By: */s/ Bijal V. Vakil*
Bijal V. Vakil (CA Bar No. 192878)
(*admitted to the Western District of Texas*)
Allen & Overy LLP
550 High Street
Palo Alto, CA 94301
Telephone: 650.388.1699
Email:bijal.vakil@allenovery.com

William K. Wray Jr. (TX Bar No. 24134189)
(*admitted to the Western District of Texas*)
Allen & Overy LLP
One Beacon Street
Boston, MA 02108
Telephone: 650.388.1714
Email:william.wray@allenovery.com

COUNSEL FOR UNITY SOFTWARE, INC.